## READER et al. v. ROBERTS et al.

### No. 3891.   Decided March 30, 1923.

CHATTEL MORTGAGES—MORTGAGE OF SHEEP AND INCREASE HELD TO AP-
PLY TO LAMBS AFTERWARD BORN. Where a mortgage on sheep
fully described them and was to apply to their increase, lambs
born after the mortgage was given, and marked at the time of
their sale to a third person so that they could be identified as
part of the flock, were subject to the mortgage.

Appeal from District Court, Fourth District, Uintah
County; *Elias Hansen,* Judge.

Action by J. H. Reader and another against M. H. Rob-
erts and others. From judgment for plaintiffs against the
named defendants separately and defendants William Craver
and John O. Watters, jointly, the last two named defendants
appeal.

AFFIRMED.

*Pope & Porter,* of Duchesne, for appellants.

*Charles De Moisy,* of Vernal, for respondents.

WEBER, C. J.

Judgment was rendered by the trial court against M. H.
Roberts separately, and Wm. Craver and John O. Watters
jointly. The appeal is by Craver and Watters.

The evidence supports all the material findings of fact,
which are:

(1)   That on the 18th day of December, 1917, at Vernal, Utah,
defendant M. H. Roberts made, executed, and delivered to Clay
Robinson & Co., of Chicago, Ill., his certain promissory note where-
by he promised to pay to said Clay Robinson & Co., one year after
said date, the sum of $6,000, with interest at the rate of 8 per cent.
per annum after date, and with 5 per cent. attorney's fees and all
costs of collection.

Appeal from Fourth District

(2)  That, to secure the payment of said promissory note, said defendant executed and delivered to Clay Robinson, & Co., in good faith and without any attempt to defraud creditors or purchasers, his certain chattel mortgage, whereby he mortgaged to Clay Robinson & Co. 750 young ewes and 15 Cottswold bucks, all wool-branded R in red paint and earmarked as follows:  Crop in left ear and upper and under bit in right ear, being all the sheep so marked and branded in the herd or herds of said mortgagor and all that he owned bearing said marks and brands, together with the increase thereof.

(3)  That a certified copy of said chattel mortgage was filed on the 2d day of August, 1918, in the office of the county recorder of Uintah county, Utah, and on the 14th day of September, 1918, a like certified copy of said chattel mortgage was filed in the office of the county recorder of Duchesne county, Utah, the counties in which the said mortgaged sheep were being ranged and herded.

(4)  That prior to the commencement of this action plaintiffs, for value, became the owners and holders, by mesne assignment, of said promissory note and said chattel mortgage, and are still the lawful owners and holders of the said promissory note and said chattel mortgage.

(5)  That about the 3d day of November, 1918, with notice of the aforesaid chattel mortgage, defendants William Craver and John O. Watters purchased from the defendant M. H. Roberts 182 head of lambs, which were running with their mothers and were wool-branded with R in red paint the same as the mothers of said lambs, and that the said lambs were of the value of $8 per head, the total value of said lambs being $1,456.

(6)  That on or about the 17th day of February, 1919, with the knowledge and consent of the defendant M. H. Roberts, the mortgagor, 401 head of sheep, being the total number of sheep remaining of the mortgaged sheep, were sold for the sum of $4,812, which said sum, with an additional $100, was paid to plaintiffs, and said sum was applied in part payment of the promissory note hereinabove mentioned, and that said sum of $4,912 was the only sum paid on said promissory note, and that according to the terms of said note there was on February 17, 1919, a balance of principal and interest due of $1,683.74.

The only question of sufficient importance to require discussion is involved in the assignment of error that the record contains no proof, and that no finding was made to the effect "that the sheep sold were actually the sheep mortgaged to Clay Robinson & Co., the evidence showing them to be increase from the sheep mortgaged and there being no allegation or proof that the said increase had an actual or

potential existence at the time the mortgage was made, and therefore would not be subject to said mortgage.''

The mortgage was on the sheep that were fully described, ''with the increase thereof.'' It is generally held that where animals are mortgaged their natural increase is covered by the mortgage. In 11 C. J. 444, § 52, the author says:

"Although it has been held that animals which have been neither littered nor conceived are without actual or potential existence, and hence cannot be mortgaged at law, it is well settled that the unborn offspring of domestic animals may properly be mortgaged along with the females which give them birth."

Where the mortgage specifically mentions the increase, the instrument should be deemed to mean what it says. In *Thompson* v. *Anderson*, 94 Iowa, 554, 63 N. W. 355, objection was made to evidence referring to the increase of mortgaged hogs, for the reason that it affirmatively appeared that none of the hogs in cantroversy were in existence at the time the mortgage was given. The court said:

"The hogs in controversy were of the increase from certain of the hogs specifically described in the mortgage; and, as the increase from the animals described was covered in specific terms by the mortgage, we think it was sufficient to convey the hogs in question."

In the case at bar the mortgage specifically covers the increase from the mortgaged sheep. The lambs sold to appellant were with the mortgaged herd and marked so that they could be identified with certainty as the increase mentioned in the mortgage. To now say that the mortgage did not cover the increase would be to nullify the plain terms of the instrument.

The trial court's findings and conclusions are right.

The judgment is affirmed.

GIDEON, THURMAN, FRICK, and CHERRY, JJ., concur.